# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDY SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-201-KEW |
| ) | |
| DEBY SNODGRASS; KRIS MAREK; ) | |
| BRYCE TODD; CLAUDIA CONNER; ) | |
| GREGORY SNIDER; SCOTT LANGE; ) | |
| LESSLEY PULLIAM; and ) | |
| MICHAEL VAUGHT, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Docket Entry #37). Beginning in 1998, Plaintiff was employed by the Oklahoma Tourism and Recreation Department ("OTRD") as a Park Ranger II and worked at the Cherokee Landing State Park. As a term of his employment, Plaintiff's conduct was required to conform to the "Park Ranger Rules of Ethical Conduct" (the "Rules") contained in the Park Ranger Policy and Procedure Manual at RP30-5-304(I)(b) provided on the issue of "Conduct Unbecoming of an Officer" that

> Rangers shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorable on the Ranger Program and Department. Conduct unbecoming of an officer shall include actions which cause disrespect to the Park Ranger Program or reflects discredit upon the Ranger or which impairs the operation or efficiency of the Program and Department.

The Rules also provided at RP30-5-304(I)(l) concerning "Dereliction of Duty" that

> Rangers shall not . . . , play games, . . ., or otherwise engage in entertainment or unacceptable standards which cause disrespect to the individual, Program, or Department.

The Rules stated at RP30-5-304(I)(p) pertaining to the handling of "Confidential Information" that

> Rangers shall treat law enforcement business of the Ranger Program as confidential as provided by Oklahoma Statutes. Rangers shall not disclose information acquired by reason of their official position to any person no entitled to receive such information.

In April of 2012, Steve Williams ("Williams"), the Park Manager at Greenleaf State Park, died of a gunshot wound. The death was investigated by the Oklahoma State Bureau of Investigation ("OSBI") and the OSBI's investigation was completed on December 17, 2012.

On December 18, 2012, while in uniform, Plaintiff asked a co-worker, Josh Baker ("Baker"), if he had shot Williams. Baker "appeared to be very upset" by Plaintiff's question and reported it to Aron Maib ("Maib"), another Park Ranger for OTRD. Maib noted in an affidavit that "[i]t had been widely rumored that Josh Baker's wife had engaged in a marital affair with Steve Williams prior to Williams' shooting death." Defendants' Motion for Summary Judgment, Exh. 6, Affidavit of Aron Maib, ¶ 3. Maib immediately advised Defendant Lessley Pulliam ("Pulliam"), the Park Manager of Cherokee Landing State Park, of what Josh Baker had told him.

2

Pulliam spoke with Baker about the incident and confirmed that Plaintiff had asked him if he shot and killed Steve Williams. Pulliam reported the incident to Greg Snider, Northeast Region Manager for OTRD and Defendant Mike Vaught ("Vaught"), former Chief Park Ranger and an employee of the OTRD at all times relevant to this case.

Vaught also attested by affidavit that "[i]t had been widely rumored that Josh Baker's wife had engaged in an extramarital affair with Steve Williams prior to Williams' shooting death, so Randy Smith's comments were cause for concern and taken very seriously."[1]  Defendants' Motion for Summary Judgment, Exh. 5, Affidavit of Mike Vaught, ¶ 5. As a result of Plaintiff's comment, on December 19, 2012, Mr. Vaught contacted the OSBI and informed them that he would have Plaintiff contact them about the death of Williams and Baker's "potential involvement if necessary". Id. at ¶ 6.  On the same date, Vaught also spoke with Plaintiff who informed Vaught that he had asked Baker about Williams' death as a joke.  Vaught requested that Plaintiff write an incident report describing his exchange with Baker.

---

[1] Plaintiff objects to the statements in the affidavit concerning the rumors of the affair, stating "any rumor is hearsay and not indicative of who was aware of the rumor or its validity." Consideration of this statement evidence is limited as a demonstration of the awareness of the affiants of the alleged rumor and the affect that the awareness had in precipitating their actions.  Such "state of mind" evidence represents a permissible exception to the hearsay rule, which does not require acceptance of the truth of the matter asserted in the statements. Fed. R. Evid. 803(3).

On December 19, 2012, Plaintiff provided completed an incident report. He stated that

> In jest I asked Josh if he shot Steve Williams there was nothing intentional about the question (sic). Really I was just messing with Josh to see his reaction. I did not think that Josh had done anything wrong, and in hindsight I realize that it was a bad joke.
>
> During the months of Steve Williams (sic) death there had been a lot of rummers (sic) going around, and I though Josh had probably heard all that had been going around. The whole thing was misunderstood, and I appologize (sic) for my lack of forethought.
>
> Defendants' Motion for Summary Judgment, Exh. 9, Incident Report dated December 19, 2012.

On December 28, 2012, Plaintiff was notified in writing that his actions were considered a violation of Merit Rule 530:10-11-91(a), OTRD Operating Procedure P-135(a), and OTRD Procedure RP30-5-304(a) and (b). The bases for finding these violations were set forth in the letter in the following recitation:

> Mr. Smith is a Park Ranger, Level II, and has been employed with the OTRD since July 31, 1996.
>
> On December 18, 2012, Ranger Smith was talking to Josh Baker, Equipment Operator, Level I, outside of the Tenkiller State Park maintenance building. As Jeff Garrett, Laborer, Level I, approached Ranger Smith and Mr. Baker, Ranger Smith asked Mr. Baker "did you shoot Steve Williams?"
>
> Mr. Baker complained about this line of questioning to his chain of command. Greg Snider, Regional Manager, contacted Mike Vaught, Chief Ranger, regarding your actions with Mr. Baker. On December 19, 2012, Chief Ranger Vaught contacted you requesting that you prepare an incident report regarding your December 18, 2012, interaction with Mr. Baker. in your incident report you admitted this line of questioning was a joke designed to see how Mr. Baker would react. You admitted that you did

4

> not believe that Mr. Baker had done anything wrong, yet you took no action to inform Mr. Baker that he was not under criminal investigation or to apologize for this serious error in judgment until you were required to write the incident report.
>
> Ranger Smith your actions indicate that you have treated a fellow OTRD employee discourteously and have caused this employee to potentially believe that he was a suspect in an criminal investigation.

\* \* \*

Defendants' Motion for Summary Judgment, Exh. 10.

The letter informed Plaintiff that a pre-termination hearing would be conducted on January 7, 2013 at 10:00 a.m. at the OTRD office in Oklahoma City, Oklahoma. Plaintiff was also issued a Notice of Pre-Termination Hearing and a Suspension with Pay. The Notice was hand delivered to Plaintiff on December 28 or 29, 2012.

Bryce Todd ("Todd"), a hearing officer for OTRD, was designated to act as the sole hearing officer at Plaintiff's pre-termination hearing.

On January 2, 2013 at 10:52 a.m., Plaintiff e-mailed Defendant Scott Lange ("Lange"), OTRD's Human Resources Director, requesting a continuance of the pre-termination hearing because "the weekend and holidays for the New Year have left me unable to contact representation." On January 2, 2013 at 11:04 a.m., Lange forwarded the e-mail to Defendants Claudia Connor, OTRD's general counsel, and Deby Snodgrass ("Snodgrass"), former director of the OTRD, for approval. Lange's e-mail to Snodgrass indicated

> I received this request this morning. If you choose to

grant this request, I would recommend that the hearing not be continued beyond January 14, 2013. I have a call in to Bryce on another issue and I don't what (sic) his availability is for any date other than January 7, 2013.

On January 2, 2013 at 1:36 p.m., Snodgrass responded, "[p]lease set according to your recommendation." Before the information was communicated to him, Plaintiff submitted his resignation by e-mail to Lange on January 2, 2013 at 4:17 p.m. Plaintiff's request for a continuance was never denied by any of the Defendants.

Plaintiff testified that he called Lange about the continuance request but that Lange told him that Claudia Conner made those decisions and would not be back in the hearing date on January 7, 2013.

On October 16, 2013, Plaintiff commenced this action in the District Court in and for Sequoyah County, Oklahoma. On May 28, 2014, Defendants removed the case to this Court. In the agreed Pretrial Order entered in this case, Plaintiff alleges Defendants violated his constitutional procedural due process rights as enforced through 42 U.S.C. § 1983 in (1) demonstrating bias or predetermining that he should be terminated in advance of the pre-termination hearing; (2) failing to grant him a continuance of the pre-termination hearing as requested; and (3) failing to employ progressive discipline rather than termination for Plaintiff's offense.

Under Federal Rule of Civil Procedure 56(c), summary judgment

6

shall be granted if the record shows that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." Riggins v. Goodman, 572 F.3d 1101, 1108 (10th Cir. 2009) (internal quotation

marks omitted). Defendants do not challenge whether Plaintiff possessed a protected interest in his employment. The Court, therefore, addresses the second component required for due process.

"An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)(internal quotation marks omitted). Because "the root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing before he is deprived of any significant property interest," there must be "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Id. (internal quotation marks omitted). "[S]uch a hearing requires: (1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story." Riggins, 572 F.3d at 1108 (brackets and internal quotation marks omitted). But "[a] full evidentiary hearing is not required prior to an adverse employment action"; it suffices that the employee is "given notice and an opportunity to respond." Id. (internal quotation marks omitted).

Clearly, Plaintiff was provided with notice of the transgressions for which an adverse employment action was proposed,

8

the nature of the action proposed to be taken, and a date and time for a hearing for Plaintiff to present his side of the circumstances forming the basis of the adverse action. The notice provided the requisite due process to protect Plaintiff's property interest in continued employment.

Plaintiff, however, proposes that the effectiveness of the due process provided to him was compromised by several factors. Plaintiff first contends that the parties involved in the process demonstrated a pre-determination toward supporting his termination in advance of the hearing and also demonstrated bias which would affect the fairness of the hearing. Plaintiff's evidence of pre-determination and bias consists of (1) a conversation overheard by another employee of OTRD, Jeff Garrett, between Lange and Maib wherein Lange allegedly stated "they want Randy Smith out"; (2) a Personnel Transaction form dated January 2, 2013 and signed on January 2, 2013 which notes in the Agency Remarks portion of the form that "Mr. Smith resigned effective January 7, 2013, in lieu of discharge"; (3) Maib being friends with Todd such that bias was presumed; (4) a belief that Snodgrass had never reversed a recommendation for termination in the past and that he did not believe she would in his case; and (5) a belief that other employees involved in the process were biased because of prior interactions with Plaintiff or because of their unwillingness to change an employment decision made by others.

9

"[I]n order for a hearing to afford an individual due process, the hearing tribunal must be impartial. A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing." Corstvet v. Boger, 757 F.2d 223 (10th Cir. 1985). "[A] substantial showing of personal bias is required to disqualify a hearing officer or tribunal in order to obtain a ruling that the hearing is unfair." Roberts v. Morton, 549 F.2d 158, 164 (10th Cir. 1976), cert. denied, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). Tribunals enjoy a presumption that they are not biased unless it is substantially demonstrated that they are actually biased with respect to factual issues being adjudicated. See, e.g., Mangels v. Pena, 789 F.2d 836, 838 (10th Cir. 1986).

The fallacy in Plaintiff's position rests on the unsupported belief that any bias by persons not involved in the pre-termination hearing and the resulting decision coming out of that hearing taints the objectivity of the hearing process. Todd was the assigned hearing officer for Plaintiff's case. Only evidence of his alleged bias would be pertinent to the discussion of an insufficiently neutral hearing tribunal or hearing officer. The only allegation specific to Todd is his alleged relationship with Maib. Plaintiff takes an extraordinary leap of faith to assert that this relationship is sufficient to demonstrate bias on the part of the only hearing officer assigned to Plaintiff's pre-

termination hearing.  Plaintiff contends that since Maib received the complaint from Baker, reported it to superiors, and is friends with Todd, Todd is necessarily tainted, biased and could not provide a fair hearing for Plaintiff.  Plaintiff has not made the "substantial showing" necessary to find Todd to have been a biased hearing officer such that the pre-termination hearing could be considered violative of due process requirements.

Plaintiff also contends that the decision to terminate was predetermined as reflected in the Personnel Transaction form.  He asserts the use of the term "in lieu of termination" demonstrates his termination was a foregone conclusion regardless of the presentation at the hearing.  The form was not prepared by Todd, the hearing officer who would have considered Plaintiff's presentation but for his resignation.  Additionally, the form was signed after the resignation was submitted and reflects that the termination would have resulted since Plaintiff did not appear at the pre-termination hearing.  Certainly, Plaintiff had no knowledge of this form at the time he decided to resign instead of proceed with the hearing and so it could not have played a part in his decision to resign.  Plaintiff attempts to read into the statement more than is objectively present and this Court concludes that this stray statement is not indicative of a predetermination of the outcome of the hearing, had it taken place.

Plaintiff next asserts that Defendants failed to grant him a

continuance of the pre-termination hearing.  The evidence does not support a finding that Plaintiff failed to receive the requested continuance.  The request was not denied at any time.  Snodgrass' response, while not a model of clarity, did not deny the request but explicitly granted the request, deferring the precise timing of the extension to Lange's recommendation as stated in the prior e-mail.  The problem with these events rests with timing.  Plaintiff made his request for extension to Lange on January 2, 2013 at 10:52 a.m.  Lange forwarded the request to Connor and Snodgrass at 11:04 a.m. with his recommendation for dates.  At 1:36 p.m., Snodgrass granted the request and deferred to Lange on the timing.  The timing of Plaintiff's telephone call to Lange is not provided in the evidence but it was prior to Snodgrass' response to him since he referred to Connor rather than to Snodgrass who submitted an e-mail response.  At 4:17 p.m., Plaintiff submitted his resignation.  Since the hearing was not set until January 7, 2013, it is unclear why Plaintiff decided to resign at this time, even if he was under the impression that Connor had to make the determination.  His resignation effectively ended Defendants' ability to act on his request.

Plaintiff offers the testimony of a former OTRD employee by affidavit and, in the supplemental briefing, by deposition – Ellen King ("King").  King acted as human resources program manager during the employment actions taken against Plaintiff.  She

disagreed with the level of discipline taken against Plaintiff. She testified that she believed the outcome of the pre-termination hearing was predetermined because of communications she had with Lange - she "got the feeling" but could not "say . . . I'm sure of it.  Just knowing [Lange]." She also stated in response to whether Lange ever told her what they wanted to do to discipline Plaintiff, "[y]ou know, part of me wants to say yes, but without just being straight out, I would rather say I don't remember." She also did not have any knowledge of an investigation into Plaintiff's actions.  More importantly, King did not have knowledge of the hearing officer assigned to Plaintiff's case.

King also testified that she heard that Plaintiff had been denied an extension for the pre-termination hearing from "Cathy, the young lady that worked with me, but I'm not positive." After reading the e-mail exchange on the issue, however, King stated his extension had not been denied.  She did not believe Plaintiff's comment to Baker warranted his termination.  She also admitted that she had not heard of other instances involving a comment such as that made by Plaintiff being made in the context of a murder investigation.

In her affidavit, King makes several negative comments concerning the operations at OTRD since Snodgrass took over and criticized the manner in which Lange conducted employee matters. The vast majority of these comments have little or no bearing on

13

the specific circumstances of Plaintiff's case. King's comments that "[i]t was clear that there was some sort of vendetta that OTRD or Snodgrass and others had against Randy Smith" when, in her opinion, the discipline imposed upon Plaintiff compared to others. This statement represents rank speculation, especially in light of the vagueness of her recollections as to the specifics of Plaintiff's case reflected in her deposition testimony. In short, much of King's testimony is discounted because she lacked personal knowledge of the basis for Plaintiff's discipline and because she includes speculative and opinionated information, not evidence. See, Fed. R. Civ. P. 56(c)(4); Argo v. Blue Cross & Blue Shield of Kansas, Inc., 452 F.3d 1193, 1200 (10th Cir. 2006).

Moreover, this Court also notes that Plaintiff's basis for requesting the continuance was somewhat tenuous. He stated that the holidays precluded him from obtaining representation. Since the pre-termination hearing "is not an elaborate procedure" and "serves merely as an initial check against mistaken decisions", the right to counsel has not been recognized, in contrast to a post-termination hearing. Hughes v. Unified School Dist. No. 330, Wabaunsee County, Kans., 872 F.Supp. 882, 890-91 (D. Kan. 1994) citing Loudermill, 470 U.S. at 545-46. Had Plaintiff appeared at the pre-termination hearing, he would have been able to hire counsel and pursue a post-termination evidentiary appeal with the Oklahoma Merit Protection Commission. Okla. Stat. tit. 74 §§ 840-

6.5 and 6.7. Defendants were not obligated to grant the request on the basis provided.

Plaintiff also contends Defendants failed to employ progressive discipline as provided by the OTRD policies rather than imposing termination for his actions. As an initial matter, whether progressive discipline was or was not employed in this case is immaterial and irrelevant to the issue on the single claim presented by Plaintiff - whether he received adequate due process before being deprived of his property interest in his continued employment. To the extent Plaintiff includes this argument in his continuing effort to show predisposition for his termination, he fails to allege that Todd as the hearing officer at the pre-termination hearing participated in any of the employment decisions, communicated with those that did, or demonstrated bias in his conduct which would have deprived Plaintiff of his constitutional right to due process.

OTRD policy permitted termination for Plaintiff's conduct. If Defendants acted contrary to the letter or intent of the policy for progressive discipline in any way or considered a prior incident which should not have been considered in accordance with policy, such conduct does not rise to the level of a constitutional due process violation. "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." Bishop v. Wood, 426 U.S. 341, 350 (1976);

Clinger v. New Mexico Highlands Univ. Bd. of Regents, 215 F.3d 1162, 1168 (10th Cir. 2000)(citation omitted).  Moreover, "'[a] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause.'"  Hennigh v. City of Shawnee, 155 F.3d 1249, 1256 (10th Cir. 1998) citing Hicks v. City of Watonga, 942 F.2d 737, 746 n. 4 (10th Cir. 1991)(quoting Mangels v. Pena, 789 F.2d 836, 838 (10th Cir. 1986)); Levitt v. University of Tex. at El Paso, 759 F.2d 1224, 1230 (5th Cir.) ("Even if [a] university depart[s] from its own regulations, not every violation by an agency of [its own] rules rises to the level of a due process claim." (internal quotations omitted)), cert. denied, 474 U.S. 1034 (1985).  The failure to follow progressive discipline represents a managerial discretionary act, whether mistaken or not, which is not violative of Plaintiff's constitutional rights.

Defendants also raise the issues of a lack of personal participation by some Defendants and qualified immunity.  Since this Court has determined that none of Defendants' actions represent a constitutional due process violation, these issues need not be addressed.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Docket Entry #37) is hereby **GRANTED.**

IT IS FURTHER ORDERED that the jury trial of this case set for January 18, 2017 is hereby **STRICKEN**.

IT IS SO ORDERED this 11th day of January, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE